## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**UNITED STATES OF AMERICA**

**v.**                                           **Civil No.: 8:12-cr-00278-JRR**

**ALTON MAY,**

               *Defendant.*

### <u>MEMORANDUM OPINION</u>

Pending before the court is Defendant Alton May's Motion for a Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 194; the "Motion"). The court has reviewed all papers;[1] no hearing is necessary. Local Rules 105.6, 207 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted.

### I.   <u>BACKGROUND</u>

May is an inmate currently serving a 300-month sentence. (ECF No. 194 at p. 1.) He is housed at FCI Pekin and has served approximately 155 months of his sentence. (ECF Nos. 70, 194, 225.) His projected release date is April 6, 2033. (ECF No. 196 at p. 1.)

On May 3, 2011, May, along with Steven Vondell Williams, demanded money at gunpoint from a Loomis Armored US Inc. employee who was refilling an ATM machine at a 7-Eleven store in Glenarden, Maryland. (ECF No. 194 at p. 1–2; ECF No. 196 at p. 4.) The Loomis employee complied and gave May and Williams the bag containing the money. (ECF No. 196 at p. 4.) May and Williams fled with the money bag to May's residence in Washington, D.C., stopping on the way to dispose of the bag in a dumpster. (ECF No. 194 at p. 1–2; ECF No. 196 at p. 4.) Upon reaching May's residence, May and Williams discovered a global positioning satellite ("GPS")

---

[1] In addition to the Government's opposition and May's reply (respectively, ECF Nos. 196 and 200), May filed supplemental papers. (ECF Nos. 216 and 225.) The Government did not further respond. May's mother also filed correspondence with the court in support of this Motion. (ECF No. 226.)

tracking device mixed in with the money and destroyed the device before fleeing; May fled to New York.  (ECF No. 194 at p. 2; ECF No. 196 at p. 4.)  The GPS allowed law enforcement to trace the money back to May's residence where they ultimately recovered approximately $30,000 in cash, as well as three handguns and two baseball caps.  (ECF No. 194 at p. 2; ECF No. 196 at p. 4–5.)

On November 7, 2011, law enforcement officers attempted to effectuate a stop of May's vehicle in Montgomery County, Maryland; May fled and was ultimately apprehended.  (ECF No. 194 at p. 2; ECF No. 196 at p. 5.)  While fleeing, May dropped his cell phone and a handgun magazine containing 12 rounds of Fabrique Nationale 5.7 x 28mm ammunition.   (ECF No. 194 at p. 2; ECF No. 196 at p. 5.)

On May 21, 2012, a grand jury returned a single-count indictment against May for Felon in Possession of Ammunition in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 196 at p. 5; ECF No. 1.)   On October 1, 2012, a grand jury subsequently returned a five-count superseding indictment, charging May with Interference with Commerce by Robbery (Hobbs Act robbery) in violation of 18 U.S.C. §1951(a); Conspiracy to Interfere with Commerce by Robbery in violation of 18 U.S.C. § 1951(a); Possession of a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. §924(c); and two counts of Felon in Possession in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 196 at p. 5; ECF No. 5.)  The grand jury then returned a second superseding indictment on March 25, 2012, recharging May with the same crimes and adding Williams to four counts.  (ECF No. 196 at p. 5–6; ECF No. 21.)

On June 10, 2013, May pled guilty to Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) (Count I) and Possession of a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c) (Count III).  (ECF No. 194 at p. 1; ECF No. 196 at p. 6.)  Pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement, the parties agreed to an aggregate

sentence of 300 months – 216 months as to Count I consecutive with 84 months as to Count III. (ECF No. 194 at p. 1; ECF No. 196 at p. 6.)

At the time of his sentencing, pursuant to the United States Sentencing Guidelines, May's offense level was 30, which accounted for a base offense level of 20 pursuant to U.S.S.G § 2B3.1(a), an additional point for the amount of money taken pursuant to U.S.S.G. § 2B3.1(b)(7)(B), an increase due to the determination that May was a career offender pursuant to U.S.S.G. § 4B1.1(b)(3), and a two-level reduction for his acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).  (ECF No. 194 at p. 2; ECF No. 64 ¶¶ 20–29.)  The Government and May agreed to the presentence investigation report ("PSR") recommendation of an offense level of 30. (ECF No. 200-1 at 6:15–21.)

May had 12 criminal history points, which included 10 points for prior criminal history, including, *inter alia*, attempted distribution of cocaine in the District of Columbia, attempted possession with intent to distribute in Frederick County, unlawful possession of a firearm by a convicted felon in the District of Columbia, and second-degree assault in Anne Arundel County, Maryland, as well as two (2) points pursuant to U.S.S.G. § 4A1.1(d) for committing the offense at issue while on probation.  (ECF No. 64 ¶¶ 33–64.)  May's 12 criminal history points established a criminal history category of V, which was increased to VI, in accordance with U.S.S.G. § 4B1.1(a), (b),[2] due to his career offender status.  (ECF No. 64 ¶ 66.)

---

[2] U.S.S.G. § 4B1.1(a), (b) provides:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.
> (b) Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career

May's PSR also identified alleged criminal conduct that did not result in conviction, including, *inter alia*, first-degree murder, robbery with a dangerous weapon, and use of a handgun during a crime of violence in April of 2007. *Id.* ¶ 75. Pursuant to 18 U.S.C. § 924(c), the mandatory term of imprisonment for Count III was 84 months. (ECF No. 64 ¶ 31.) Accordingly, the guidelines were 292 to 365 months for Count I and not less than 84 months as to Count III. (ECF No. 64 at p. 19; ECF No. 200-1 at 7:1–5.)

On October 22, 2013, then-presiding Honorable Roger W. Titus imposed a sentence of 300 months of incarceration and a supervised release term of five years. (ECF No. 70.) The parties did not object to May's Criminal History Category of VI or the guidelines range. (ECF No. 200-1 at 6:15–7:11.) On the proposed sentence, May's counsel noted traumatic events in his life:

> His mother had him when she was 15 and his dad was 16. His dad was killed when he was three years old. The father of his brother was killed when he was six years old. His Aunt Joyce, who was the one that cared for him, was murdered when he was in elementary school. His Aunt Judy was murdered also when he was in elementary school. And then his brother was murdered and then his best friend was murdered.
>
> His mom through no fault of her own was working a lot and he basically cared for himself. He got hit when he was 18 years of age by a car and spent almost a year in the hospital. And, you know, all of his role models for want of a better word, his Uncle Alan was incarcerated for robbery and murder. His Uncle Spencer is incarcerated for murder.
>
> You know, Mr. May—and I like Mr. May, Judge—make no mistake about it, he just—he never stood a chance.

(ECF No. 200-1 at 9:2–19.)

For the Government's part, counsel noted:

> [Government's Counsel]: . . . [T]he government is very familiar with Mr. May as a result of a lengthy investigation. And in this case, we

_____

offender's criminal history category in every case under this subsection shall be Category VI.

assess Mr. May, his involvement in this particular act and his criminal history and trying to do justice in this case which is to assign—to give someone what they're due as a result of their acts and their involvement. And looking at that, we assessed his age and we assessed the 3553 factors and determined that a sentence of 300 months or 25 years was an appropriate disposition for Mr. May, taking into account all of his background and his experience. And for that reason, we'd ask the Court to impose the sentence that the parties have agreed upon.

THE COURT: And you indicated that you had some evidence he had an association with Mr. Davis?

[Government's Counsel]: Yes, Your Honor. And I was quite frank with [defense counsel] that if he were convicted at trial, that there would be a significant sentencing hearing that would involve evidence relating to at least the murder that was dismissed in Montgomery County and that we had information—he indicated his involvement in that murder with Mr. Davis and Mr. Moore.

*Id.* at 10:17–11:13.

Judge Titus noted: "This is a plea submitted to me under Rule 11(c)(1)(C). I am nonetheless required to apply the guidelines." (ECF No. 200-1 at 7:1–11.) Regarding the nature and circumstances of the offense charged, Judge Titus stated:

The circumstances of this offense and the seriousness of it hardly understated. The defendant, but for the circumstance of nobody resisting him could have been before me with a far more serious charge involving the death of the armored car driver. I did preside over the trial of Earl Davis where that driver was not given the option of turning over the money. He was immediately killed. And whether you kill a person or not, you're engaging in a very dangerous, very serious business when you with the point of a gun hold up individuals whose job is to simply deliver and pick up money. And but for the happy circumstance that nobody was hurt in this robbery, he would be looking at a life sentence or far more.

I am required to impose a sentence that will promote respect for the law and to deter others from criminal conduct. A 300-month sentence is a very significant sentence. And while one might argue that it's very harsh, the criminal history of this defendant is not something that encourages me when I look at how many times he has committed more and more crimes even though he's faced

incarceration. So the factor of protecting the public from further crimes of the defendant is quite high in this case.

(ECF No. 200-1 at 12:14–13:11.)

Regarding disparities in sentencing, Judge Titus also explained: "I'm required to consider the need to avoid any unwarranted sentence disparities. That's the principal purpose of the guidelines. I will do that." (ECF No. 200-1 at 14:1–3.) Ultimately, Judge Titus concluded, "Having considered all those factors, I conclude that the agreed upon sentence is acceptable to the Court and I will impose a sentence in accordance with the agreement of the parties that were submitted to me under Rule 11(c)(1)(C)," identifying the sentence as a variant sentence as to Count I "by agreement of the parties."[3] (ECF No. 200-1 at 14:6–10; 21:9–13.)

On June 6, 2022, May filed an administrative request for compassionate release with the Warden of FCI Perkin on the grounds that: (1) Hobbs Act robbery, Count I, is no longer classified as a crime of violence, and (2) he is no longer classified as a career offender. (ECF No. 194 at p. 3; ECF No. 196 at p. 10.) More than 30 days later, May filed the instant Motion, moving for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) based on "extraordinary and compelling reasons"—specifically based on a sentencing disparity and his mother's declining health. (ECF No. 194 at p. 1.)

## II.   **LEGAL STANDARD**

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed.'" 18 U.S.C. § 3582(c). "However, Congress created an exception to that general rule when 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Brown*,

---

[3] May notes in reply that, upon further review of the sentencing transcript, "it is unclear if the sentencing guidelines were correctly calculated at the time of [his] original sentencing because of the agreed upon 300-month sentence." (ECF No. 200 at p. 1 n.1.) The court need not consider this, to the extent May requests the court address it, because whether his original sentence was within guidelines or a variant sentence is not dispositive of the Motion.

78 F.4th 122, 128 (4th Cir. 2023) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  "For many years, district courts could reduce a term of imprisonment on that ground only 'upon motion of the Director of the Bureau of Prisons.'"  *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A) (2002)).  "But in 2018, Congress passed the First Step Act, which 'permits incarcerated defendants to file motions for compassionate release directly with the district court, provided they have fully exhausted their administrative remedies.'"  *Brown*, 78 F.4th at 128 (quoting *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023)).

Section 3582(c)(1)(A), as amended by the First Step Act, provides in relevant part:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case.—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  Accordingly, "[i]n analyzing a motion for compassionate release, district courts must determine: (1) whether extraordinary and compelling reasons warrant such a reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Malone*, 57 F.4th at 173 (citing 18 U.S.C. § 3582).  "Only after this

analysis may the district court grant the motion if (3) the relevant 18 U.S.C. § 3553(a) factors, to the extent they are applicable, favor release." *Id.*

Thus, even if the court concludes that such extraordinary and compelling circumstances exist, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). The section 3553(a) factors include: "(1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims." *United States v. Johnson*, No. CR ELH-99-352, 2023 WL 7130950, at *21 (D. Md. Oct. 27, 2023).

"A district court need not provide an exhaustive explanation analyzing every § 3553(a) factor." *United States v. Jenkins*, 22 F.4th 162, 170 (4th Cir. 2021). "Further, a district court is not required to address each of a defendant's arguments when it considers a motion for compassionate release under § 3582(c)(1)." *Id.* In *Jenkins*, the Fourth Circuit explained:

> Although a district court is not required to address each of a defendant's arguments for a reduced sentence, just how much of an explanation is required depends upon the narrow circumstances of the particular case. *Chavez-Meza*, 138 S. Ct. at 1965 (affirming the district court's "barebones form order" denying defendant's request for a sentence modification under § 3582(c)(2)); *see also High*, 997 F.3d at 191 (applying *Chavez-Meza* to affirm the district court's denial of a § 3582(c)(1)(A) motion for compassionate release).

In *Chavez-Meza*, the Supreme Court held:

> In some cases, it may be sufficient for purposes of appellate review that the judge simply relied upon the record, while making clear that he or she has considered the parties' arguments and taken account of the § 3553(a) factors, among others. But in other cases, more explanation may be necessary (depending, perhaps, upon the legal arguments raised at sentencing).

*Chavez-Meza*, 138 S. Ct. at 1965.

> In other words, there is no "categorical requirement" that a court acknowledge and address each of the defendant's arguments on the record. *Id.* at 1965. Instead, the relevant standard is whether the district court "set forth enough to satisfy [this] court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority, so as to allow for meaningful appellate review." *High*, 997 F.3d at 190 (quoting *Chavez-Meza*, 138 S. Ct. at 1965).

22 F.4th at 170–71.

## III.   **ANALYSIS**

May moves this court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) for "extraordinary and compelling reasons," specifically disparity in his original sentence and the sentence he would receive today.[4]  (ECF No. 194 at p. 1; ECF No. 225 at p. 1.)  The Government opposes May's Motion and argues that the court is not required to recalculate May's sentence in view of the changes in the caselaw.  (ECF No. 196 at p. 2–3.)  Further, the Government notes that May's sentence was made pursuant to "the prospect of an upward departure for his involvement in" murders.  *Id.*  Finally, the Government contends that, even if the court were to credit May's

---

[4] May also avers that his mother's declining health constitutes an extraordinary and compelling reason for release. (ECF No. 194 at p. 9–10.)  The court does not find that May's mother's health constitutes such a reason.  To be clear, the Fourth Circuit has determined that a defendant is "not required to exhaust his administrative remedies with the BOP *at all* beyond making the initial request for compassionate release," and it saw "no reason to limit his motion for compassionate release in the district court to only those grounds for compassionate release he identified in his request to the BOP." *United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022), *cert. denied,* 144 S. Ct. 1007 (2024) (emphasis in original).  Because the court finds May properly exhausted his administrative remedies, he may properly assert his mother's health as a basis of his Motion.  However, while the court appreciates the medical issues May's mother faces, it is not persuaded he has demonstrated an extraordinary and compelling reason for compassionate release on that basis.  Courts in this circuit have rejected argument that a family member's need for care constitutes an extraordinary and compelling reason for release where the family member does not require a live-in caregiver, where the family member is not incapable of caring for her own needs, and where another caregiver is available to fill the role. *See United States v. Gregory*, 538 F. Supp. 3d 562, 569 (D. Md. 2021); *United States v. Wilcom*, No. 17-CR-00343-PWG, 2022 WL 799453, at *5 (D. Md. Mar. 15, 2022); *United States v. Randleman*, No. 1:19-CR-521, 2023 WL 3791575, at *5 (M.D.N.C. June 2, 2023).  The court does not diminish Ms. May's stated health concerns; however, even crediting that he is the only available caregiver, May has not demonstrated that his mother is either incapable of caring for her own needs or that her medical conditions require a live-in caregiver.

arguments, May does not demonstrate that a reduction of his sentence is consistent with the factors set out in section 3553(a). *Id.* at p. 3.

## A. Exhaustion of Administrative Remedies

Section 603(b) of the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to file a motion for compassionate release after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).  The Fourth Circuit has explained:

> [Section] 3582(c)(1)(A) "outlines two routes" for requesting compassionate release in the district court, "one of which does not require exhaustion of administrative remedies." *Muhammad*, 16 F.4th at 131.  Specifically, the defendant may move for compassionate release "after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*." 18 U.S.C. § 3582(c)(1)(A) (emphases supplied). Stated differently, "the threshold requirement" to file a compassionate release motion is "satisfied if a defendant requests the [BOP] to bring a motion on [his] behalf and *either* fully exhausts all administrative rights to appeal the [BOP]'s decision *or* waits 30 days from the date of [his] initial request." *Muhammad*, 16 F.4th at 131 (emphases in original).  In short, the defendant is not required to exhaust his administrative remedies with the BOP *at all* beyond making the initial request for compassionate release. Therefore, we see no reason to limit his motion for compassionate release in the district court to only those grounds for compassionate release he identified in his request to the BOP.

*United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022), *cert. denied,* 144 S. Ct. 1007 (2024) (emphasis in original) (footnote omitted).

With one exception not at issue in this court's analysis,[5] the Government does not dispute, and the court is satisfied, that May properly exhausted his administrative remedies by filing an

---

[5] *See supra* note 4.

administrative request for compassionate release with the Warden of FCI Pekin, and more than
thirty (30) days have passed since his request was submitted.  (ECF No. 194-1.)

**B.  Extraordinary and Compelling Reasons**

In general, "the district court enjoys broad discretion in conducting § 3582(c)(1)(A)
analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021).  In *United States v. Taylor*,
however, the Fourth Circuit noted that "[w]hen deciding whether to reduce a defendant's sentence
under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable
policy statements issued by the Sentencing Commission.'"  820 F. App'x. 229, 230 (4th Cir. 2020)
(citing 18 U.S.C. § 3582(c)(1)(A)).  Relevant here, the Policy Statement codified at U.S.S.G. §
1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy
Statement").  Importantly, as discussed below, amendments to the Policy Statement took effect on
November 1, 2023.

Prior to the amendments, the Policy Statement began: "Upon motion of the Director of the
Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of
imprisonment . . . ."  U.S.S.G. § 1B1.13 (2021).  In analyzing this language, the Fourth Circuit in
*United States v. McCoy* stated: "[w]hen a defendant exercises his new right to move for
compassionate release on his own behalf . . . § 1B1.13 does not apply[.]"  981 F.3d 271, 281 (4th
Cir. 2020).  As a result, in 2020, the Fourth Circuit concluded: "[t]here is as of now no 'applicable'
policy statement governing compassionate-release motions filed by defendants under the recently
amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any
extraordinary and compelling reason for release that a defendant might raise.'"  *Id.* (quoting *United
States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)).

Importantly, the Fourth Circuit's holding in *McCoy* was based on a version of the Policy

Statement that has since been amended, effective November 1, 2023.  As amended, the Policy

Statement provides: "Upon motion of the Director of the Bureau of Prisons or the defendant

pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."

U.S.S.G. § 1B1.13.  "Therefore, it appears that the Fourth Circuit's conclusion in *McCoy*, 981 F.3d

at 281, to the effect that '§ 1B1.13 is not an applicable policy statement,' is no longer consistent

with the Guidelines, as amended."  *United States v. Stanley Richardson*, No. CR ELH-17-0390,

2023 WL 8478910, at *5 (D. Md. Dec. 7, 2023).   "This is because the Policy Statement is now

expressly applicable to defendant-filed motions pursuant to 18 U.S.C. § 3582(c)(1)(A)."  *Id.*

The court is mindful that May filed the Motion on August 11, 2022, before the November

1, 2023 amendment went into effect.  That notwithstanding, whether the court applies § 1B1.13 or

considers any extraordinary and compelling reason that May might raise, the court comes to the

same conclusion.  *See United States v. Curtin,* No. CR TDC-14-0467, 2023 WL 8258025, at *2

(D. Md. Nov. 29, 2023) (considering "the full range of extraordinary and compelling reasons

available under *McCoy* without regard to limiting considerations set forth in the new policy

statement" because the amendment "arguably narrows the range of potential extraordinary and

compelling reasons" from those previously in effect); U.S.S.G. § 1B1.11[6] (barring use of the

Guidelines manual in effect on the date of sentencing if doing so would violate the *ex post facto*

clause); *McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) (holding that courts are not limited to

extraordinary and compelling reasons referenced in the policy statement of the version of U.S.S.G.

---

[6] U.S.S.G. § 1B1.11 provides in part:

> (a) The court shall use the Guidelines Manual in effect on the date that the
> defendant is sentenced.
> (b)(1) If the court determines that use of the Guidelines Manual in effect on the
> date that the defendant is sentenced would violate the ex post facto clause of the
> United States Constitution, the court shall use the Guidelines Manual in effect on
> the date that the offense of conviction was committed.

§ 1B1.13 pre-dating the November 2023 amendments because it related to requests for compassionate release made to the BOP, not to the courts); *but see Richardson*, 2023 WL 8478910, at *5 n.3 (noting that, while the defendant's motion was filed on December 22, 2022, before the amendments took effect, "the [c]ourt applies the law in effect at the time of its decision, not the law in effect at the time the [m]otion was filed") (citing *Maryland Shall Issue, Inc. v. Governor Wes Moore*, 86 F.4th 1038 (4th Cir. 2023) (ruling in accordance with law in effect at the time of the appellate decision, not the law in effect at the time of the district court's decision)).

1. <u>Sentencing Disparities</u>

"District courts in this circuit have universally affirmed that '[t]he fact that [a defendant], if sentenced today for the same conduct, would likely receive a dramatically lower sentence than the one he is currently serving, constitutes an 'extraordinary and compelling' reason justifying potential sentence reduction under § 3582(c)(1)(A)(i).'"[7] *United States v. Elzey*, No. CR JKB-09-0288, 2022 WL 316717, at *2 (D. Md. Feb. 2, 2022) (citing cases). Still further, "some courts have applied this principle to grant compassionate release to persons who no longer qualify as career offenders." *Id.* (citing cases). *See, e.g.*, *United States v. Johnson*, No. CR DKC 10-447-2, 2024 WL 1557204, at *4 (D. Md. Apr. 10, 2024); *United States v. Curtin*, No. CR TDC-14-0467, 2023 WL 8258025, at *3 (D. Md. Nov. 29, 2023); *United States v. Clay*, No. CR CCB-11-569, 2022 WL 17812639, at *4 (D. Md. Dec. 19, 2022); *United States v. Dickerson*, No. 7:10-CR-00011, 2023 WL 7006504, at *4 (W.D. Va. Oct. 24, 2023). Sentencing disparities "may present extraordinary and compelling circumstances even when they are not decades long." *United States*

---

[7] The Government correctly notes that such a conclusion is not compulsory. *See Concepcion v. United States*, 597 U.S. 481, 487 (2022) (holding that the First Step Act requires district courts to consider "intervening changes" of law but "does not compel courts to exercise their discretion to reduce any sentence based on those arguments"); *United States v. Reed*, 58 F.4th 816, 818 (4th Cir. 2023) (noting that *Concepcion* "instructs that district courts need not reduce any sentence under the First Step Act").

*v. Dickerson*, No. 7:10-CR-00011, 2023 WL 7006504, at *6 (W.D. Va. Oct. 24, 2023) (citing cases

noting disparities that ranged from 22 months to five years).

This court has previously identified four factors, based on the Fourth Circuit's decision in

*McCoy*, that it considers in analyzing motions for compassionate release based on sentencing

disparities:

> (1) whether the sentence imposed is grossly disproportionate to a
> sentence the defendant would likely receive if sentenced today,
> signifying that the sentence is "dramatically longer than necessary
> or fair;" (2) whether the sentence imposed is unusually or grossly
> lengthy in comparison to sentences currently imposed for similar or
> more serious offenses; (3) the length of the sentence the defendant
> already has served; and (4) other personal characteristics of the
> defendant, which may include the defendant's relative youth at the
> time of the offense and their post-sentencing conduct in the BOP.

*United States v. Legrand*, No. CR CCB-10-052, 2024 WL 2941282, at *5 (D. Md. June 11, 2024)

(citations omitted); *see United States v. Howard*, No. CR ELH-13-0629, 2024 WL 112010, at *13

(D. Md. Jan. 10, 2024) (same); *Johnson*, 2023 WL 7130950, at *16 (same); *United States v. Myers*,

No. 01-cr-0188-CCB, 2021 WL 2401237, at *3 (D. Md. June 11, 2021) (same).  "The first two

factors of the analysis . . . directly relate to the questions of whether the defendant's sentence is

'unusually' long and significantly different from modern sentences, the third factor relates (albeit

with less specificity) to the requirement that a defendant have served at least 10 years of

imprisonment, and the fourth factor requires consideration of the defendant's personal

circumstances."  *Legrand*, 2024 WL 2941282, at *5.

Regarding the first factor, the court considers whether the sentence imposed upon May is

grossly disproportionate to the sentence he would likely receive if (re)sentenced today.  At the

time of May's sentencing, his offense level was determined to be 30, which included a career

offender enhancement and an adjustment for acceptance of responsibility.  (ECF No. 196-3 ¶¶ 28–

29.)  His total criminal history points were calculated at 12, with a criminal history category of VI—informed by his status as a career offender.  *Id.* ¶ 65.  The guidelines range was thus calculated as 292 to 365 months.  *Id.* ¶ 85.

Caselaw development would affect May's career offender status if he were sentenced today.  First, in *United States v. Green*, the Fourth Circuit held that "Hobbs Act robbery is not a crime of violence under the career offender provision of the Sentencing Guidelines," at U.S.S.G. § 4B1.1.  996 F.3d 176, 184 (4th Cir. 2021).  This court recently noted:

> The Court observed that although Hobbs Act robbery involves harm to "person *or property*," *id.* (quoting 18 U.S.C. § 1951(b)(1)) (emphasis added), the Career Offender definition of "crime of violence" under the Guidelines is limited to use of force against *persons*. *See Green*, 996 F.3d at 180–184 (analyzing U.S.S.G. § 4B1.2(a)). In other words, "Hobbs Act robbery extends to a broader range of conduct—specifically, the use and threat of force against property, as well as persons—than" is encompassed by the definition of "crime of violence" under U.S.S.G. § 4B1.2(a). *Green*, 996 F.3d at 184. Therefore, the Court concluded that, under the categorical analysis, Hobbs Act robbery is not a crime of violence under U.S.S.G. § 4B1.1. *Id.*

*Howard*, 2024 WL 112010, at *17 (emphasis in original).  Because U.S.S.G. § 4B1.2(a)(2) "provides, *inter alia*, that a defendant is a career offender if 'the instant offense of conviction is a felony that is . . . a crime of violence,'" *see id.* at *11, May contends, and the Government does not dispute, that his Hobbs Act robbery charge would not qualify him as a career offender today. (ECF No. 194 at p. 5–6; ECF No. 196 at p. 13–15.)

Additionally, regarding May's previous convictions, the Fourth Circuit held in *United States v. Royal* that "Maryland's second-degree assault statute reaches any unlawful touching, whether violent or nonviolent and no matter how slight, 'convictions under the statute . . . cannot categorically be crimes of violence.'"  731 F.3d 333, 342 (4th Cir. 2013) (quoting *Karimi v. Holder*, 715 F.3d 561, 568 (4th Cir. 2013)).  Further, in *United States v. Campbell*, the Fourth

Circuit held that the commission of an attempt crime does not constitute a "'controlled substance offense' supporting a career offender sentencing enhancement" under the sentencing guidelines. 22 F.4th 438, 440 (4th Cir. 2022).  May therefore contends, and the Government does not dispute, that, in view of intervening caselaw, his prior convictions would not qualify him as a career offender if sentenced today.  (ECF No. 194 at p. 6; ECF No. 196 at p. 13–15.)

Accordingly, in view of the intervening caselaw, the court is persuaded that May would no longer meet the criteria for a career offender if sentenced today.  Without the career offender finding, May's offense level would be 19, with a criminal history category of V and a total guidelines range of 141 to 155 months (57 to 71 months for Count I; 84 months for Count III consecutive to Count I). (ECF No. 194 at p. 6–7; ECF No. 64 ¶¶ 21–66.)  May and the Government agree that the guidelines range would be 141 to 155 months.  (ECF No. 194 at p. 7; ECF No. 196 at p. 14 n.3.)  Thus, the high end of the guidelines sentence May would face today is 145 months lower than the 300-month sentence he received—a difference of over 12 years.

The disparity between May's current sentence and the sentence he would receive if sentenced today is further pronounced when considering the resentencing of his co-defendant, Williams.  The court is mindful that it must "consider the need to avoid unwarranted sentencing disparities among similarly situated defendants;" and still, sentencing is an individualized assessment. *United States v. Eccleston*, 573 F. Supp. 3d 1013, 1018 (D. Md. 2021).  In *Eccleston*, in reviewing a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), the court found that the sentencing disparity between co-defendants presented an extraordinary and compelling circumstance. *Id.* at 1016–19.  The *Eccleston* court explained:

> Where there are unwarranted disparities, this Court in particular has in certain cases reduced sentences, especially where less culpable defendants receive a more severe sentence than their more culpable co-defendants. *See, e.g., Sappleton*, PJM-01-284, 2021 WL 598232,

at *1, *3 (finding extraordinary and compelling circumstances based on sentencing disparity between conspiracy leader and less culpable co-defendants). In some cases, a disparity has arisen over time, for instance, where a more culpable co-defendant benefits from changes in the sentencing regime and successfully moves to lower his sentence, such that a less culpable co-defendant ends up with a disproportionately long sentence. *See, e.g., United States v. Payton*, PJM-06-cr-341, 2021 WL 927631, at *2 (D. Md. Mar. 11, 2021) (co-defendant's significantly reduced sentence "resulted in a striking disparity where a middling supplier of drugs is punished far more severely than the violent 'ringleader' of a drug trafficking organization that dealt in far greater amounts of drugs" and was an "extraordinary and compelling" reason for relief).

In this case, Eccleston's co-defendants received vastly lower sentences than he did – despite the prosecutor's representations and Judge Williams' concern over sentencing proportionality. The resulting sentencing spread demonstrates that Eccleston's disparate sentence, in context, is unwarranted. *See Payton*, PJM 06-341, 2021 WL 927631, at *2; *Edwards*, PJM-05-cr-179, 2021 WL 1575276, at *3; *United States v. Stockton*, ELH-00-352, 2021 WL 1060347, at *14 (D. Md. Mar. 17, 2021) (considering sentence reduction of defendant's more culpable brother as a factor that supports reducing defendant's sentence to time served).

Moreover, while Eccleston does not make the argument that he would receive a lower sentence today, data from the 2020 Sentencing Commission Sourcebook show that the mean sentence imposed for drug trafficking was 76 months, 3 substantially lower than the 180 months Eccleston received for his drug charges.

Let it be clear: Eccleston committed serious, albeit non-violent, drug offenses. His role in the drug trafficking operation, however, was relatively minor. The disparity between his 188-month sentence and the sentences of his co-defendants is striking, and particularly concerning given the Government's representation at sentencing before Judge Williams that comparatively higher sentences were expected for other more culpable defendants. *See Sappleton*, PJM-01-284, 2021 WL 598232, at *3 (noting defendant was not a leader in drug trafficking ring yet he had served more time than the leader of the ring). *Compare United States v. Morales-Vega*, PJM 08-0051, 2021 WL 4864450 at *5 (Oct. 19, 2021) (no extraordinary and compelling circumstances due to 50+ month sentencing disparity between petitioner and co-defendants where co-defendants benefited from early acceptance and were minor players in drug conspiracy compared to petitioner, who had a manager role and

> possessed a weapon). In sum, the sentencing disparity in this case is
> extraordinary and compelling.

573 F. Supp. 3d at 1018–19. While the circumstances in the case at bar differ from the

circumstances noted above, the court still finds it persuasive where a defendant demonstrates an

unwarranted sentencing disparity with a co-defendant.

After trial, Williams was convicted of Interference with Interstate Commerce by Robbery

in violation of 18 U.S.C. § 1951(a); Conspiracy to Interfere with Interstate Commerce by Robbery

in in violation of 18 U.S.C. § 1951(a); Possession of a Firearm in Furtherance of a Crime of

Violence in violation of 18 U.S.C. § 924(c); and Felon in Possession of a Firearm in violation of

18 U.S.C. § 922(g). (ECF No. 109.) At his original sentencing, then-presiding Judge Titus found

Williams to have a total offense level of 33 and a criminal history category of VI. (ECF No. 121.)

The court sentenced Williams to 324 months of incarceration (ECF No. 140 at 3:14–19; 19:13–

20.) At sentencing, Judge Titus remarked:

> That is the principal purpose of the sentencing guidelines. They have
> been very helpful in producing a recommended range of sentence in
> this case. But I also note that I have in front of me the sentencing
> file from the defendant's codefendant, Mr. May.
>
> Mr. May's offense level was exactly the same as this defendant's
> offense level, except that it's three levels lower because he pled
> guilty and accepted responsibility and reduced it by three levels;
> otherwise, they are carbon copies of each other in terms of the
> guidelines. He received a sentence that was 216 months plus 84
> months for a total of 300 months.
>
> So when I am considering the goal of uniformity, I do want to
> consider not just what the guidelines recommend but also what has
> happened to people under similar circumstances, i.e., a defendant
> who acted identically, had the same offense level, the same criminal
> history category, but who recognizes a responsibility and accepted
> it and has a lower level. And that is not a disparity in sentencing.
>
> I do not believe that a sentence at—below that of Mr. May, under
> any circumstances, would be justified because I think to do so would

18

violate the requirement of uniformity of sentencing.

(ECF No. 140 at 18:3–25.)

Because Williams no longer qualified as an armed career criminal in view of *Johnson v. United States*,[8] 576 U.S. 591 (2015), this court vacated his sentence and ordered resentencing with the consent of the parties.  (ECF No. 187.)  At his resentencing, the parties agreed that Williams had a criminal history category of VI.  (ECF No. 218, 220.)  The revised PSR calculated a total offense level of 24.[9]  (ECF No. 220 at p. 5; ECF No. 204 ¶ 28.)  The court resentenced Williams to a total term of incarceration of 184 months.  (ECF No. 223.)

While neither side argues that Williams is in some way more or less culpable than May, the court still finds the disparity in Williams' and May's sentences to be significant and unwarranted.  May, as William's co-defendant, "acted identically."  (ECF No. 140 at 18:15–21.) If May were sentenced today, his criminal history category and offense level would be lower than Williams'.  (ECF No. 64 ¶¶ 21–66.)  Moreover, unlike Williams, May accepted responsibility for the crime.  *Id.* ¶ 29.  Despite those facts, May is currently serving a sentence that is over nine years longer than Williams' sentence.  The foregoing, both the disparity in the sentence May would receive today and the disparity in the sentences of the co-defendants, leads the court to conclude that the sentencing disparity in this case constitutes an extraordinary and compelling reason for reduction of his sentence.

The court is not persuaded by the Government's argument that May cannot demonstrate an extraordinary and compelling reason based on a sentencing disparity because he pled guilty pursuant to a Rule 11(c)(1)(C) plea agreement with an agreed-upon sentence of 300 months.  (ECF

---

[8] In *Johnson v. United States*, the United States Supreme Court held that increasing a defendant's sentence under the residual clause of the Armed Career Criminal Act denies a defendant due process of law.  576 U.S. 591, 597 (2015).

[9] The Government objected to the PSR's conclusion, proposing a total offense level of 27.  (ECF No. 220 at p. 6.)

No. 196 at p. 15.)   On this topic, the court finds the reasoning of *United States v. Barbour* persuasive:

> Other courts have recognized that such a change in sentencing exposure can constitute a sufficiently "compelling and extraordinary" circumstance to support a compassionate release request. *See, e.g., United States v. Williams*, No. 14-cr-428, 2021 WL 5827327, at *5–*7 (E.D. Va. Dec. 8, 2021) ("[D]efendants who, following *Norman*, no longer qualify as 'career offenders' may suffer from the kind of sentencing disparity that the compassionate release statute was intended to capture . . ."). *See also Naylor v. United States*, No. 7:14-cr-00026, 2023 WL 4162280, at * 4 (W.D. Va. June 23, 2023) (citing to a number of cases in which courts have granted compassionate release motions based on the claim that "the defendant received what would be an invalid career offender designation under *Norman* if sentenced today"). The court agrees with these cases and finds compelling and extraordinary circumstances based on the significant difference in sentencing exposure.
>
> The court notes that, in reaching this conclusion, it also has considered the impact of Barbour's guilty plea pursuant to Rule 11(c)(1)(C). His plea agreement called for a binding sentence of 100 months, the sentence the court imposed. The plea and that agreed-upon sentence represented a substantial benefit to him based on the sentencing range he faced at the time. Indeed, as part of the agreement, the government agreed not to file an enhancement pursuant to 21 U.S.C. § 851. (PSR ¶ 44.) Moreover, had he not pled guilty his guideline range would have been 262 to 327 months. (*Id.*) And, even with acceptance of responsibility, his actual guideline range was 188 to 235 months. His agreed-upon sentence, then, was not as harsh as it could have been, given his guideline ranges. But the potential sentencing *exposure*, and the guidelines that were before the parties and the court, was very different then and now.

688 F. Supp. 3d 335, 342–43 (W.D. Va. 2023) (footnote omitted) (emphasis in original).   It continues:

> [T]he difference in the guideline ranges then, versus now, means that if Barbour and the government were negotiating today, it would be within a very different framework. *See, e.g., United States v. Jimenez*, No. 5:09-CR-00032-MFU-1, 2023 WL 3309878, at *8 (W.D. Va. May 8, 2023) (granting motion to reduce sentence despite Rule 11(c)(1)(C) plea and noting that if the defendant were

20

> sentenced today, the "plea negotiations would occur in a greatly
> modified framework" in terms of the sentencing guidelines in
> effect). Indeed, the court believes it very unlikely that Barbour
> would today agree to a plea for 100 months, which is 13 months
> *above* the top of the now-applicable guideline range. . . . Thus, while
> the existence of the binding plea causes the court to consider
> carefully whether he should receive a reduced sentence, the great
> disparity in the guideline ranges convinces the court that at least
> some reduction is warranted.

*Id.* at 345.

The court agrees that here, too, it is reasonable to conclude that a different guidelines range likely would have resulted in a different plea negotiation.[10]  It is very unlikely that, if sentenced today, May would agree to a plea involving a sentence of 145 months (or over 12 years) above the total guidelines range.  *See id.*  The court still "consider[s] carefully whether he should receive a reduced sentence," but "the great disparity in the guideline ranges convinces the court that at least some reduction is warranted."  *See id.*

Turning then to the second factor—comparison of May's sentence to sentences for similar or more serious offenses—the court notes that May's sentence of 300 months is longer than the average sentences for murder in the Fourth Circuit in 2023.[11]  Even in 2013, May's sentence was still well above the average sentence for murder in the Fourth Circuit.[12]  His present sentence is

---

[10] On this same note, the court is also not persuaded by the Government's averment of evidence that connected May to uncharged murders somehow would suggest that his sentencing disparity of over 12 years is not extraordinary and compelling.  (ECF No. 196 at p. 2–3.)  The court agrees with May that simply because the government "investigated but did not have enough evidence to prosecute May for other crimes cannot serve as the basis for such a disparate sentence." (ECF No. 200 at p. 6.)

[11] U.S. Sentencing Comm'n, *Statistical Information Packet, Fiscal Year 2023, Fourth Circuit*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2023/4c23.pdf (last visited October 22, 2024) (Table 7: Sentence Length by Type of Crime).

[12] U.S. Sentencing Comm'n, *Statistical Information Packet, Fiscal Year 2013, Fourth Circuit*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2013/4c13.pdf (last visited October 22, 2024) (Table 7: Length of Imprisonment by Primary Offense Category).

also more than 15 years longer than the average sentence for robbery in the Fourth Circuit in 2023.[13]

In consideration of the third factor—the amount of time May has served on his sentence, the court notes that he has served slightly more than half of his original sentence, approximately 155 months, with approximately 30 months of earned good-time credits as of January 16, 2024. (ECF No. 225 at p. 7.)  May has thus served more than ten years of his sentence.  *See Legrand*, 2024 WL 2941282, at *5, *supra*.

Finally, the court considers the fourth factor, May's personal characteristics.  May was 47 years old at the time of the crime and is currently 60 years old.  (ECF No. 64.)  During his more than 12 years of incarceration, May has had three disciplinary incidents, including one refusal to obey an order in 2014, a refusal of a work or program assignment in 2018, and, most seriously, possessing a dangerous weapon in 2015.[14]  (ECF No. 194-6.)  He accepted responsibility as to the last and, as a result, lost 41 days of good-time credit.  (ECF No. 196 at p. 17.)  May has also worked while incarcerated and completed 15 official programs, as well as a parenting course.  (ECF No. 194 at p. 11;  ECF No. 216).

Considering the aforementioned factors, the court is persuaded that May has demonstrated that his sentencing disparity presents an extraordinary and compelling reason to justify the requested relief.[15]

---

[13] U.S. Sentencing Comm'n, *Statistical Information Packet, Fiscal Year 2023, Fourth Circuit*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2023/4c23.pdf (last visited October 22, 2024) (Table 7: Sentence Length by Type of Crime).

[14] May notes that this disciplinary infraction arose when he was at USP Lee, which was "particularly dangerous around this time" as a result of fights that broke out in the facility, contributing to his decision to possess "a weapon for protection."  (ECF No. 194 at p. 11–12.)

[15] The court notes that it would come to the same conclusion if it considered the updated Policy Statement.  U.S.S.G. § 1B1.13(b)(6), titled "Unusually Long Sentence," provides:

> If a defendant received an unusually long sentence and has served at least 10 years
> of the term of imprisonment, a change in the law (other than an amendment to the

**C.  Section 3553(a) Factors**

Having concluded that May has successfully demonstrated an extraordinary and compelling reason for release, the court must consider the factors at 18 U.S.C. § 3553(a) to determine whether a sentence modification is warranted.  *See* 18 U.S.C. § 3582(c)(1)(A).

> Those factors include, among others, "the nature and circumstances of the offense," "the history and characteristics of the defendant," and "the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with . . . medical care, or other correctional treatment in the most effective manner."

*United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024) (quoting 18 U.S.C. § 3553(a)); *see United States v. Johnson*, No. CR ELH-99-352, 2023 WL 7130950, at *21 (D. Md. Oct. 27, 2023) (discussing the factors, "(1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence

---

> Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(c) provides:

> Except as provided in subsection(b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

disparities; and (6) the need to provide restitution to victims."). "District courts 'enjoy broad discretion' in evaluating the § 3553(a) factors when deciding a motion for compassionate release," and they must only "set forth enough to satisfy [the appellate court] that it has considered the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority, so as to allow for meaningful appellate review." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024) (quoting *United States v. Bethea*, 54 F.4th 826, 834 (4th Cir. 2022) and *United States v. High*, 997 F.3d 181, 188–89 (4th Cir. 2021)).

Without fulsome analysis on each factor, *see id.*, this court finds Judge Titus's prior assessment compelling still. To be clear, May committed a serious offense that could have easily become far more serious, even deadly. *See* ECF No. 200-1 at 12:14–13:11. Moreover, May's criminal history is extensive, and, and view of that, the need to protect the public from further crimes, as well as to promote respect for the law, is "quite high." (ECF No. 200-1 at 13:2–11.) The court is also cognizant of the extensive trauma May has experienced in his life, including the killings of his father, his paternal uncle, two of his aunts (one of whom cared for him), his brother, and his best friend. (ECF No. 200-1 at 9:2–19.)

The court also looks to May's behavior while in custody as an important indicator as to whether he remains a danger to the community. *See United States v. Stockton*, No. CR ELH-99-352, 2021 WL 1060347, at *15 (D. Md. May 17, 2021) (noting that "[c]ourts place significant weight on a defendant's post-sentencing conduct because it 'provides the most up-to-date picture of [his] history and characteristics'") (quoting *Pepper v. United States*, 562 U.S. 476, 492 (2011)). During his incarceration, May has only been subject to three disciplinary infractions; one infraction included possession of a dangerous weapon for which he accepted responsibility. He has been free of infractions since 2018. He has also completed various programs and a parenting class.

The mother of May's daughter provided a letter in support of his motion, stating that she has "seen the growth in Mr. May first hand" and that he is more patient.  (ECF No. 194-7.)  May further supplies a "letter of contrition" in which he acknowledges the "illegal acts" he has committed and states that he has experienced significant growth over the past years.  (ECF No. 194-3.)

The court concludes that the section 3553(a) factors favor a sentence on the high end of the guidelines; however, May has already served a sentence at the high end of the guidelines he would face if sentenced today.  May has served approximately 155 months and earned approximately 30 months of earned good-time credit.  Moreover, upon release from incarceration, he will be subject to supervised release for five years.  (ECF No. 70.)  The court therefore finds that the section 3553(a) sentencing factors support its conclusion that a sentence modification is warranted.

## IV.   <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, Defendant Alton May's Motion (ECF No. 194) will be granted.  The court will reduce his sentence on Counts I and III to not less than time served, plus fourteen days.  The court adopts and will reimpose all of the previously imposed terms and conditions of supervised release.

October 25, 2024

_____/s/_____
Julie R. Rubin
United States District Judge